IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SCOTT A. CASH, | ) | 4:06CV3073 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| ROBERT HOUSTON, Director and | ) | |
| FRED BRITTEN, Warden, | ) | |
| | ) | |
| Respondents. | ) | |

This matter is before the court on Petitioner Scott A. Cash's ("Cash") Petition for Writ of Habeas Corpus ("Petition"). (Filing No. 1.) After initial review, Respondents[1] filed an Answer (filing no. 14) and a collection of state court records (filing no. 13; *see also* filing nos. 19, 25). Petitioner then received leave to amend his Petition (*see* filing nos. 30, 35), and Respondents filed an Amended Answer (filing no. 36). The parties have now filed briefs on the merits of Petitioner's claims (filing nos. 47, 53, 54), and this matter is fully submitted for decision by the court.

Cash's Petition alleges 33 grounds for relief (filing no. 1), and, as alluded to above, Cash was later granted leave to add four additional grounds to the Petition (filing nos. 30, 35). Also, on April 10, 2006, Petitioner sought permission to add yet another ground. (Filing No. 7.) It appears that this request was not ruled upon, though Respondents addressed this new ground in their original answer. (Filing No.

---

[1]The Petition names Robert Houston and Fred Britten as Respondents; however, the Answer appears to have been filed on behalf of Robert Houston alone. (*See generally* Filing No. 14.) Indeed, the captions of many of the pleadings filed in this case, including some of the court's own orders, seem to suggest that Robert Houston is the sole Respondent. (*See, e.g.*, Filing Nos. 5, 43.) In the interests of clarity and consistency, the plural term "Respondents" will be used throughout this Memorandum and Order.

14 at CM/ECF pp. 64-65.)  The court therefore considers the claim submitted in filing number 7 to be a part of the instant Petition, along with the 33 original grounds and the four grounds listed in filing number 30.  In summary, Cash alleges that he is entitled to habeas relief because:

1.  Cash was mentally ill at the time of his crime, and neither "State County Attorney Shawn Eitherton, [n]or his preliminary [h]earing [a]ttorney (Gary Hogg) . . . ever had him evaluated."

2.  Attorney Gary Hogg ("Hogg") "had Mr. Cash waive his preliminary hearing" despite knowing that Cash "should have been evaluated prior to any such waiver."

3.  Mr. Mike Baldwin ("Baldwin"), who is alleged to have worked in the same public defender's office as Hogg, improperly submitted an affidavit on behalf of Amy Cash which caused "Mr. Cash's bond to be raised."

4.  Both Baldwin and Hogg had Cash waive his preliminary hearing despite knowledge that Cash was mentally ill and should have been evaluated.

5.  Hogg failed to file a motion challenging the county court's jurisdiction on the ground that the complaint was notarized "by the City Attorney's Clerk, and not under Oath by a District Court Clerk, or Judge."

6.  Hogg failed to challenge the legality of Cash's arrest.

7.  Nancy Peterson ("Peterson"), who served as Cash's "trial and arraignment attorney," failed to challenge the legality of the arrest.

8.  Peterson failed to pursue an insanity defense.

2

9.      Peterson, Hogg, and Baldwin "conspired" in a manner that amounted to a conflict of interest.

10.     Peterson "submitted a Doctors [sic] evaluation into the record, when there was no insanity defense raised on Mr. Cash's behalf."

11.     Peterson failed to obtain a competency hearing for Petitioner or to cross-examine unspecified "Doctor's [sic] of record."

12.     A doctor's report was made a part of the record "without any defense filed on Mr. Cash's behalf according to the insanity statute."

13.     The judge did not determine properly whether Cash was competent to stand trial.

14.     The judge "used his own psychological expertise for Mr. Cash['s] [c]ourt appointed expert without any testimony concerning the psychologist[']s technical conclusions."

15.     The judge should not have accepted Cash's guilty plea because Cash was insane, and therefore "never committed any criminal acts."

16.     The information, which was amended prior to the arraignment, was not properly filed stamped, and therefore the court lacked subject matter jurisdiction.

17.     The court lacked jurisdiction because the complaint was not "verified under oath by a District Court Clerk . . . or by a County Court Judge."

18.     The affidavit submitted in support of Cash's arrest warrant, which was sealed

3

by the judge, was defective.

19.    Cash was wrongly denied evidentiary hearings on his postconviction motion, two motions for a new trial, and state habeas corpus petition.

20.    The judge failed to consider statutory factors when determining Cash's sentence, improperly considered prejudicial material when determining the sentence, and denied Cash a fair opportunity to refute prejudicial material.

21.    The judge failed to recuse himself despite the fact that he was the presiding judge in a prior criminal case against Cash and in Cash's divorce proceedings.

22.    Peterson failed to seek the judge's recusal even though she knew that the judge had presided in past cases involving Cash.

23.    Cash's conviction amounts to a miscarriage of justice in light of the actions by the judge and all of the attorneys involved in the case.

24.    The District Court of Johnson County, Nebraska, improperly denied Cash permission to proceed in forma pauperis in Case No. CI 04-157.

25.    The District Court of Buffalo County improperly denied Cash an evidentiary hearing on his motion for a new trial.

26.    The District Court of Buffalo County failed to "read . . . his Self-incrimination Rights" to Cash prior to his plea.

27.    The District Court of Buffalo County failed to ask Cash whether he understood that by pleading guilty, he was waiving his right to confront witnesses, his right to a jury trial, and his privilege against self-incrimination.

4

28.   The factual basis of the charge against Cash was manipulated and fabricated.

29.   Peterson provided ineffective assistance by "accepting the state's version of the facts" at the plea hearing.

30.   Peterson and Hogg failed to challenge "tainted evidence" at the preliminary hearing.

31.   The Nebraska Supreme Court erred by denying Cash evidentiary hearings on his postconviction motion, his new trial motion, and his state habeas corpus petition.

32.   The District Court of Buffalo County erred by accepting Cash's plea of no contest in light of evidence that Cash was legally insane at the time of the crime.

33.   The District Court of Buffalo County erred by failing to provide Cash with a competency hearing.

34.   The District Court of Buffalo County erred by omitting the element of "malice" from the information.

35.   The prosecutor breached the plea agreement by failing to state during the sentencing hearing that Cash agreed to plead guilty in order to save the victim's family pain and that Cash was genuinely remorseful about his actions.

36.   Peterson ought to have withdrawn Cash's plea on the ground that the State failed to honor the plea agreement.

37.   Peterson ought to have withdrawn Cash's plea on the ground that the plea was

5

not made knowingly, voluntarily, or intelligently.

38.    The trial court judge and the Nebraska Court of Appeals failed to recognize plain error on the record, i.e., that the plea was not voluntary.

(*See* Filing No. 1 at CM/ECF pp. 5-17; Filing No. 7 at CM/ECF pp. 1-3; Filing No. 30 at CM/ECF pp. 1-4.)

## *I.   BACKGROUND*

The relevant facts and procedural history are undisputed.  (*See* Filing No. 53 at CM/ECF p. 1.)  Petitioner was originally charged in the District Court of Buffalo County, Nebraska, with one count of attempted first degree murder, two felony counts of terroristic threats, and three counts of use of a firearm to commit a felony.  (Filing No. 13-2, Attach. 1, at CM/ECF pp. 6-10.)  On November 6, 2000, pursuant to a plea agreement, Petitioner pled no contest to charges of attempted second degree murder and use of a firearm to commit a felony.  (*Id.* at CM/ECF pp. 46-49, 55-56.)  The factual basis for the charges was as follows:

On or about April 11, 2000, Scott Cash entered the home of Keith Morse . . . .  In this residence in the living room was seated Amy Cash, Scott Cash's estranged wife, his child Dylan Cash and Eric Maack.  They were seated on the couch.  Verbal altercation ensued, at which time the . . . persons who were sitting on the couch left the couch area.  Mr. Cash had a .40 caliber semi-automatic handgun, at which time he pointed it at Mr. Maack stating . . . if I can't have you, no one can [or something to that effect.]  Four shots were fired in the residence which struck Eric Maack in the back of the head with the shots exiting the front of his head causing Mr. Maack to fall to the ground with an extreme injury.

(*Id.* at CM/ECF p. 57.)

On March 16, 2001, the Buffalo County, Nebraska District Court sentenced Petitioner to a 17- to 30-year term of imprisonment for attempted second degree murder and to a 5- to 15-year term of imprisonment for use of a firearm to commit a felony, with the terms to run consecutively. (*Id.* at CM/ECF p. 88.) The convictions and sentences were summarily affirmed by the Nebraska Court of Appeals on August 9, 2001, and the mandate issued on September 11, 2001. (Filing No. 13-5, Attach. 4, at CM/ECF pp. 8, 84.) It appears that no other action was taken in Petitioner's direct appeal.

On October 9, 2001, Cash filed a "Verified Motion for Postconviction Relief" ("Post Conviction Motion") in the District Court of Buffalo County, Nebraska (filing no. 13-9, Attach. 8, at CM/ECF pp. 24-28), and on December 21, 2001, Cash filed a "Motion for Postconviction Relief Act" [sic] in the District Court of Buffalo County, Nebraska (*id.* at CM/ECF pp. 64-79). It appears that Cash attempted to have the latter motion accepted as an addendum to the October 9, 2001 Post Conviction Motion, but his request was rejected by the district court and the motion filed on December 21, 2001 was denied in its totality. (*Id.* at CM/ECF pp. 57-58.) In an order dated July 10, 2002, the district court sustained Cash's Post Conviction Motion "as to his claim that his trial attorney failed to file a petition for further review by the Nebraska Supreme Court" in Cash's direct appeal, but otherwise denied Cash's Post Conviction Motion. (*Id.* at CM/ECF p. 63.) The district court ordered that the Clerk of the Supreme Court allow Cash to seek further review of the Nebraska Court of Appeals' decision affirming his conviction and sentence, which was the remedy specifically requested by Cash and his postconviction counsel. The court questioned, however, whether it had jurisdiction to enter such an order. (*Id.* at CM/ECF p. 61.) The court's concern appears to have been well-founded. In an order filed on July 25, 2002, the Nebraska Supreme Court dismissed the "new appeal" awarded by the district court for lack of jurisdiction. (Filing No. 13-5, Attach. 4, at CM/ECF p. 21.)

7

Cash appealed the district court's order of July 10, 2002. (Filing No. 13-9, Attach. 8, at CM/ECF p. 4.)  The Nebraska Court of Appeals affirmed the order on October 31, 2003, and a mandate issued on December 5, 2003.  (Filing No. 13-10, Attach. 9, at CM/ECF pp. 1-2.)  Meanwhile, on or about August 22, 2003, Cash filed a "Motion for New Trial Based Upon Newly Discovered Evidence" in the District Court of Buffalo County, Nebraska.  (*Id.* at CM/ECF pp. 16-19.)  The district court summarily dismissed this motion in an order filed on August 25, 2003.  (*Id.* at CM/ECF p. 20.)  Petitioner filed a notice of appeal on September 8, 2003 (*id.* at CM/ECF p. 4), and the summary dismissal was affirmed by the Nebraska Court of Appeals on July 15, 2004 (*id.* at CM/ECF p. 55).  Petitioner moved for a rehearing on July 26, 2004, and this motion was overruled on September 3, 2004.  (*Id.*)  The mandate issued on October 4, 2004.  (*Id.*)

On or about October 25, 2004, Cash filed an application for a writ of habeas corpus in the District Court of Buffalo County, Nebraska.  (Filing 13-12, Attach. 11, at CM/ECF p. 48.)  On or about October 27, 2004 the court dismissed the application for lack of jurisdiction, stating, "Mr. Cash in the text of his application indicates that he is currently a resident of Johnson County, Nebraska, and is currently incarcerated at the Tecumseh State Correctional Institution pursuant to the judgment and sentence of the District Court of Buffalo County, Nebraska" (*Id.*)  The court added that "the Nebraska Supreme Court in *Addison v. Parratt*, 204 Neb. 656 (1979) has previously stated that an application for writ of habeas corpus to release a prisoner confined under sentence of court must be brought in the county where the prisoner is confined." (*Id.*)

On November 5, 2004, Cash filed a "Motion for Writ of Habeas Corpus" in the District Court of Johnson County, Nebraska.  (Filing No. 13-11, Attach. 10, at CM/ECF pp. 10-18.)  Apparently, Cash also filed a motion for leave to proceed in forma pauperis.  (Filing No. 13-12, Attach. 11, at CM/ECF p. 50.)  On November 19, 2004, the court entered an order stating, "The Court denies Motion to Proceed in

8

Forma Pauperis for reason case [sic] is collateral another [sic] and has no merit; must be filed in Buffalo County." (*Id.*)  Cash filed a notice of appeal on November 23, 2004.  (Filing No. 13-11, Attach. 10, at CM/ECF pp. 1.)  However, on November 29, 2004, the district court denied Cash's motion to proceed in forma pauperis on appeal, stating that the "case is frivolous." (Filing No. 13-12, Attach. 11, at CM/ECF p. 51.) On December 23, 2005, Cash's appeal was dismissed because he failed to file the statutory docket fee or to appeal the denial of his motion to proceed on appeal in forma pauperis.  (Filing No. 13-13, Attach. 12, at CM/ECF p. 2.)  Cash filed a petition for further review, but his petition was overruled on January 25, 2006.  (*Id.*)  A mandate issued on February 14, 2006.  (*Id.*)

On March 27, 2006, Cash filed the instant Petition.  (Filing No. 1.) Respondents have filed a brief in which they argue that the Petition must be dismissed because it was not filed timely and because all of Petitioner's claims are procedurally defaulted.  (Filing No. 47 at CM/ECF p. 3-7.)  In opposition to Respondents' "timeliness" argument, Cash asserts that his Petition was filed timely because various motions filed in state court tolled the statute of limitations.  In opposition to Respondents' "procedural default" argument, Petitioner submits that his claims must be considered because he is innocent of the charges.

## II.   ANALYSIS

### A.   Statute of Limitations

"The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, sets a one-year statute of limitations for seeking federal habeas corpus relief from a state-court judgment." *Lawrence v. Florida*, 127 S. Ct. 1079, 1082 (2007) (citing 28 U.S.C. § 2244(d)(1)).  This one-year limitation period runs from the latest of the following dates:

9

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Importantly, however, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).

Here, there is no indication that the Petition was filed within one year of the dates specified in § 2244(d)(1)(B)-(D).  The issue, therefore, is whether the Petition was filed within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

The limitations period began to run on September 11, 2001, when Petitioner's direct criminal appeal became final.  *See, e.g.*, *Riddle v. Kemna*, 523 F.3d 850, 852 (8th Cir. 2008) (holding that the petitioner's direct appeal became final, and the one-year limitations period began to run, on the date that the Missouri Court of Appeals

10

issued its mandate).  The parties are in agreement that the limitations period was tolled by the filing of Cash's Post Conviction Motion on October 9, 2001, and by his motion for a new trial on August 22, 2003.  Thus, there is no dispute that the period between October 9, 2001, and the issuance of the mandate affirming the dismissal of Cash's motion for a new trial on October 4, 2004, is excluded from the limitations period. *See Riddle*, 523 F.3d at 852 (indicating that a postconviction case is pending, and the limitations period is tolled, from the filing of the postconviction motion until the mandate issues).  The parties disagree, however, whether the time period between the filing of the habeas corpus motion in the District Court of Johnson County, Nebraska, on November 5, 2004, and the issuance of the mandate affirming the dismissal of that motion on February 14, 2006, must also be excluded from the limitations period.[2]  If these days are excluded, the Petition is timely.  If not, the Petition was not filed within the AEDPA's one-year limitations period and is untimely.

Respondents argue that the relevant days must not be excluded from the limitations period because the Johnson County habeas petition was not a "properly filed application."  (Filing No. 47 at CM/ECF p. 7; *see also* 28 U.S.C. § 2244(d)(2).) More specifically, they argue that Cash's filing of a state habeas petition "in the wrong court and without paying either the requisite filing fee or being granted in forma pauperis status" cannot result in the tolling of the limitations period.  (Filing No. 47 at CM/ECF p. 7 (citing *Lewis v. Norris*, 454 F.3d 778, 781 (8th Cir. 2006)).)

---

[2]As noted above, Cash also filed an application for a writ of habeas corpus in the District Court of Buffalo County, Nebraska, on October 25, 2004.  Also as noted above, however, this application was dismissed on or about October 27, 2004, and it appears that Cash took no action to appeal that dismissal.  In this case, the timeliness of the Petition does not depend upon whether the days from October 25, 2004, through October 27, 2004, are excluded from the calculation of the limitations period. Therefore, this application will not be discussed further.

11

To be "properly filed" for the purposes of § 2244(d)(2), it is not enough that an application for state postconviction or other collateral review be "delivered to, and accepted by, the appropriate court officer for placement into the official record." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). The application's "delivery and acceptance" must also be "in compliance with the applicable laws and rules governing filings." *Id.* "These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Id.* (footnote omitted). As noted above, Respondents submit that the habeas petition filed in the District Court of Johnson County failed to satisfy two of the applicable requirements: 1) the petition was filed without payment of the fee and without leave to proceed in forma pauperis, and 2) the district court determined that the petition was filed in the wrong court. The Eighth Circuit has held that an application for postconviction review is not "properly filed" when the applicant fails to pay filing fees required under state law. *Runyan v. Burt*, 521 F.3d 942, 945 (8th Cir. 2008). However, Respondents have not argued–much less established–that Nebraska law requires a docket fee (or an order granting an application to proceed in forma pauperis) as a prerequisite to the "proper" filing of an application.[3] Therefore, the court rejects Respondents' argument that Cash's Johnson County Habeas petition was not "properly filed" due to Cash's failure to pay the filing fee.

Respondents' argument that the relevant petition was not "properly filed" because it was filed in the wrong court rests on stronger footing.[4] The District Court

---

[3] *See State v. Jackson*, 730 N.W.2d 827, 830-32 (Neb. Ct. App. 2007) (explaining that the prepayment of fees is not required in postconviction cases in Nebraska, but that fees are taxed as costs at the conclusion of the case).

[4] Petitioner has not argued that his habeas petition *was* "properly filed" in the District Court of Johnson County; instead, the arguments submitted in his response brief focus solely on the issue of filing fees. (Filing No. 53 at CM/ECF pp. 1-6.)

12

of Johnson County stated specifically that Cash was required to file his petition in Buffalo County.  Even though this statement appears to stand in tension with the holding of the District Court of Buffalo County, it is not the role of this court to serve as a forum for an appeal of the Johnson County court's order.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Taylor v. Bowersox*, 329 F.3d 963, 968 (8th Cir. 2003) ("A state's interpretation of its own law is virtually unreviewable by a federal court.").  As Respondents correctly note, the Eighth Circuit has found that a state habeas petition filed in the wrong court is not "properly filed" for the purposes of § 2244(d)(2).  *Lewis v. Norris*, 454 F.3d at 781.  Because the Nebraska courts have concluded that Cash's Johnson County habeas petition was not filed in the correct court, the petition was not "properly filed," and the time during which it was pending[5] cannot be excluded from the calculation of the AEDPA filing deadline.  Therefore, the instant Petition was not timely filed.

The Eighth Circuit has held that equitable tolling may be applied to the AEDPA statute of limitations.  *See, e.g.*, *Riddle v. Kemna*, 523 F.3d at 857. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Id.* (quoting *Walker v. Norris*, 436 F.3d 1026, 1032 (8th Cir. 2006)).  Moreover, "[e]quitable tolling is 'an exceedingly narrow window of relief.'"  *Id.* (quoting *Jihad v. Hvass*, 267 F.3d 808, 805 (8th Cir. 2001)).  Petitioner has not argued that equitable tolling should be applied in this case, and there does not appear to be any basis for doing so.  In particular, there is no

---

[5] "[B]y definition," an application for postconviction relief is pending "until the application has achieved final resolution through the State's post-conviction procedures."  *Carey v. Safford*, 536 U.S. 214, 220 (2002).  In this case, the Johnson County habeas petition was "pending" from the date of its filing on November 5, 2004, through the issuance of the Nebraska Court of Appeals' mandate on February 14, 2006.

13

indication that any "'extraordinary circumstances external to the petitioner' stood in his way." *Id.*  The court finds that equitable tolling does not apply.

## B.    Procedural Default

The dismissal of the Petition would be required even if it had been timely filed. As noted above, Respondents argue that the claims alleged by Petitioner are procedurally defaulted (filing no. 47 at CM/ECF pp. 3-5), and Petitioner agrees (filing no. 53 at CM/ECF p. 1 ("Petitioner will agree that all his claims have been [p]rocedurally defaulted.")).  The claims are indeed defaulted, and the default can only be excused if Petitioner "shows cause and prejudice or miscarriage of justice." *Winfield v. Roper*, 460 F.3d 1026, 1034 (8th Cir. 2006).

Petitioner argues that the procedural default should be excused in light of his "actual innocence."  (Filing No. 53 at CM/ECF pp. 6-26.)  The Supreme Court has held that "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). This standard is meant to "ensure[] that petitioner's case is truly 'extraordinary,' while still providing petitioner with a meaningful avenue by which to avoid a manifest injustice." *Id.* at 537.  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "[I]n the context of a request for an evidentiary hearing," a district court reviewing an actual innocence claim "must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." *Schlup*, 513 U.S. at 331-32.   In doing so, "the court may consider how the timing of the submission and the likely credibility of [any] affiants bear on the probable reliability of the evidence." *Id.* at 332.

14

Petitioner submits two general claims that, he contends, establish his actual innocence. His first claim focuses specifically on his guilty plea. Preliminarily, he claims that in light of Amy Cash's deposition testimony of September 5, 2000, no reasonable juror would have found him guilty of making terroristic threats or using a firearm in connection with those threats. (Filing No. 53 at CM/ECF pp. 7, 126.) He reasons that because he was actually innocent of those charges, he gained no advantage by pleading guilty to the charges of attempted second degree murder and use of a firearm to commit a felony in exchange for the dismissal of the threat-related charges. (Id. at CM/ECF p. 8.) In addition, he alleges that the State breached the plea agreement by making vindictive statements about him during the sentencing hearing. (Id. at CM/ECF p. 9.) None of these points establishes that it is more likely than not that no reasonable juror would find Petitioner guilty of the charges that formed the basis of his conviction. The 2000 deposition is not alleged to be "new reliable evidence" of Cash's factual innocence with respect to these charges. House, 547 U.S. at 537 (quoting Schlup, 513 U.S. at 324). Even if it is true that Cash's plea agreement provided him little benefit or that the prosecutor breached the agreement by referring to Cash as a "monster," it simply does not follow from these arguments that Petitioner was actually innocent of the charges.

Second, Petitioner argues that he is actually innocent of the charges because 1) Amy Cash's deposition of September 5, 2000, is not credible (filing no. 53 at CM/ECF pp. 12-15); 2) a Kearney Police Report dated April 11, 2004, indicates that the victim was shot through the front of the head, rather than through the back of the head as the State alleged (id. at CM/ECF pp. 15-18, 76-117); 3) Petitioner's plea was not voluntary because if he had known of the evidence contained in the aforementioned police report and deposition, he would not have pleaded guilty (id. at CM/ECF p. 21); 4) the court lacked subject matter jurisdiction over the case (id. at 19); and 5) Petitioner's counsel "misrepresented the actual facts and testimony" and failed to discuss with him that there were "contradictory statements" that "could have shown a [j]ury . . . that the shooting did not happen the way the state and

15

witnesses alleged" (*id.* at CM/ECF p. 24).  Again, the evidence relied upon by Petitioner is not "new," and his arguments concerning the court's jurisdiction and the performance of his counsel simply do not establish his actual innocence.[6]

Petitioner admits that he entered Keith Morse's home on April 11, 2000, with a handgun and shot Eric Maack in the head.  (*See, e.g.*, Filing No. 53 at CM/ECF p. 11, 13.)  In essence, his "actual innocence" argument amounts to a claim that, based on documents that were available at the time of his plea, there is evidence that would have supported a theory that the shooting was accidental.  (*See, e.g.*, Filing No. 53 at CM/ECF p. 13 ("It is the Petitioner's defense that when Keith came running up behind the Petitioner trying to [tackle] him . . . the [g]un was . . . fired and unintentionally shot Eric Maack in the [f]ront of his [h]ead . . . .").)  However, the documents submitted by Petitioner include an eyewitness account indicating that, as the victim was positioned on the floor on his hands and knees, Petitioner pointed the gun at the victim and shot him.  (Filing No. 53 at CM/ECF p. 145.)  The witness added that no shots were fired during a struggle between Keith Morse and the Petitioner, and she stated that after the shooting, Petitioner said to her, "Bitch, I told you if I can't have you, nobody can have you."  (*Id.* at CM/ECF p. 145-46.)  Similarly, the police report submitted by Petitioner does not appear to contain any facts that would support a conclusion that the shooting was accidental.  Thus, it seems clear that no reasonable, properly-instructed juror would, upon considering Petitioner's evidence, likely find Petitioner to be innocent of the charges–even if there

---

[6]In certain circumstances, counsel's ineffectiveness can constitute "cause" to excuse a procedural default.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  However, such a claim "generally must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 489 (1986)).  In the instant case, it is undisputed that all of Petitioner's claims, including his ineffective assistance of counsel claims, are procedurally defaulted.  Therefore, Petitioner's argument that counsel misrepresented facts and testimony and failed to discuss evidence with him cannot be used to excuse the procedural default of any of Petitioner's other claims.

is some discrepancy as to whether Petitioner shot the victim through the front of the head or through the back of the head.  Therefore, even if the court could excuse the untimeliness of Cash's Petition, his claims are all procedurally defaulted.

IT IS THEREFORE ORDERED that:

1.      Petitioner Scott A. Cash's Petition for Writ of Habeas Corpus (filing no. 1), as amended (filing nos. 7 and 30), is denied in all respects and this action is dismissed with prejudice.

2.      A separate judgment will be entered in accordance with this Memorandum and Order.

June 25, 2008.                          BY THE COURT:


                                        s/ Joseph F. Bataillon_____
                                        Chief United States District Judge

17